Magistrate Judge Grady J. Leupold

```
_____ FILED _____ LODGED
_____ RECEIVED
      Dec 10, 2024
     CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY
```

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

RICARDO JEOVANY JIMENEZ VAZQUEZ

Defendant.

CASE NO.   MJ24-5414

COMPLAINT for VIOLATION

Title 21, United States Code,
§§ 846, 841(a)(1), and 841(b)(1)(A)

BEFORE the Honorable Grady J. Leupold, United States Magistrate Judge, U.S. Courthouse, Tacoma, Washington.

The undersigned complainant being duly sworn states:

**<u>COUNT ONE</u>**

***(Distribute of Controlled Substances-Fentanyl)***

On or about June 12, 2024, in Clark County, within the Western District of Washington, RICARDO JEOVANY JIMENEZ VAZQUEZ, did knowingly and intentionally distribute a controlled substance, including: N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl), a substance controlled under Title 21, United

Complaint - 1
*United States v. Ricardo Jeovany Jimenez Vazquez*
USAO # 2024R00696

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  States Code.

2      It is further alleged that the offense involved 100 grams or more of a mixture or

3  substance containing a detectable amount of fentanyl.

4      All in violation of Title 21, United States Code, 841(a)(1) and 841(b)(1)(A).

5

6                            **COUNT TWO**

7              (*Distribute of Controlled Substances-Methamphetamine*)

8      On or about June 24, 2024, in Clark County, within the Western District of

9  Washington, RICARDO JEOVANY JIMENEZ VAZQUEZ, did knowingly and

10 intentionally distribute a controlled substance, including methamphetamine, a substance

11 controlled under Title 21, United States Code.

12     It is further alleged that the offense involved 50 grams or more of

13 methamphetamine.

14     All in violation of Title 21, United States Code, 841(a)(1) and 841(b)(1)(A).

15     And the complainant states that this Complaint is based on the following

16 information:

17     I, Catherine Allaway, being first duly sworn on oath, depose and say:

18                **AFFIANT BACKGROUND AND EXPERIENCE**

19     1.    I am an investigative or law enforcement officer within the meaning of

20 Title 18, United States Code, Section 2510(7); that is, an officer of the United States, who

21 is empowered by law to conduct investigations of and to make arrests for offenses

22 enumerated in Title 18, United States Code, Section 2516.  I am a Special Agent with the

23 Federal Bureau of Investigation (FBI) and I have been so employed since May of 2019.

24 At the start of my employment, I completed the 21-week FBI Academy and was trained

25 in investigative techniques, procedures, and strategies. Until December of 2023, I was

26 assigned to the San Diego Division's Major Mexican Traffickers Task Force

27 (MMTTF). The MMTTF investigates crimes committed by Transnational Criminal

Complaint - 2
*United States v. Ricardo Jeovany Jimenez Vazquez*
USAO # 2024R00696

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   Organizations (TCOs), Drug Trafficking Organizations (DTOs), and Money Laundering

2   Organizations (MLOs). During my time assigned to the MMTTF, I have attended

3   numerous trainings tailored to agents and officers working narcotics and money

4   laundering-related investigations. Some of these trainings have been hosted by the

5   California Narcotics Officers Association (CNOA), the Money Laundering and Asset

6   Recovery Section (MLARS), and the International Narcotics Interdiction Association

7   (INIA). Additionally, I have been deeply involved in numerous investigations targeting

8   these types of organized criminal groups. Currently, I am assigned to Seattle Division's

9   Vancouver Resident Agency, where I continue to investigate TCOs.

10          2.      During investigations targeting TCOs, DTOs, and MLOs, I have employed

11  all of the traditional investigative techniques; participated in interviews of drug

12  traffickers and money launderers; conducted searches for evidence of drug trafficking,

13  bulk cash smuggling, and money laundering; participated in surveillance operations; used

14  GPS-precision location information; and conducted operations involving the use of

15  Confidential Human Sources (CHSs). I have monitored, reviewed, and acted upon the

16  results of intercepted wire and electronic communications, applied for and executed

17  federal search warrants, and secured other relevant information using various

18  investigative techniques, including electronic surveillance. I have participated in

19  undercover operations involving the controlled purchase of narcotics and the laundering

20  of narcotics proceeds. Based on my training and experience, I am knowledgeable in the

21  tactics, techniques, and procedures by which drug traffickers and money launderers

22  facilitate their criminal activities.

23          3.      The facts set forth in this Affidavit are based on my own personal

24  knowledge; knowledge obtained from other individuals during my participation in this

25  investigation, including other law enforcement personnel; review of documents and

26  records related to this investigation; communications with others who have personal

27  knowledge of the events and circumstances described herein; and information gained

Complaint - 3
*United States v. Ricardo Jeovany Jimenez Vazquez*
USAO # 2024R00696

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    through my training and experience. Because this Affidavit is submitted for the limited
2    purpose of establishing probable cause in support of the application for a search warrant,
3    this document does not contain all of my knowledge of the larger investigation.

**BACKGROUND**

5    4.    The information in this affidavit is from my personal observations and
6    knowledge, as well as from information obtained from other law enforcement officers
7    and agents participating in this investigation. Because this affidavit is submitted in
8    support of the requested criminal complaint and arrest warrants, I have not set forth all
9    information about this investigation that is known to me or other investigators, but rather
10   I have included the information that I believe is pertinent to a fair determination of
11   probable cause.

12   5.    The facts set forth in this affidavit arise from my personal and direct
13   participation in the investigation, my experience and training as an FBI Special Agent,
14   my conversations with other law enforcement personnel participating in the investigation
15   and related investigations, and my review of relevant documents and reports.

**THE INVESTIGATION**

**Identification of Ricardo Jeovany JIMENEZ Vazquez**

18   6.    In spring of 2024, FBI agents[1] met with a Confidential Human Source
19   (CHS-1). CHS-1 has been a longtime source of information and has provided accurate
20   and verified information. CHS-1 has not been convicted of any crimes. CHS-1 began
21   cooperating with the government in order to make a positive impact on the community
22   and in return for monetary compensation. Additionally, the receipt of possible
23   immigration benefits has also been discussed with CHS-1. CHS-1 told agents that a man
24   named Ricardo Jeovany **JIMENEZ Vazquez** (hereinafter **JIMENEZ**) had recently
25   arrived from Las Vegas, NV to the Vancouver, WA area, and was distributing narcotics,

27   [1] When I use the term "agents" throughout this affidavit, I am referring to law enforcement personnel, including but not limited to FBI Special Agents and Task Force Officers (TFOs).

Complaint - 4
*United States v. Ricardo Jeovany Jimenez Vazquez*
USAO # 2024R00696

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 such as methamphetamine and fentanyl pills, which were brought into the United States

2 from Mexico.

3        7.      Subsequently, agents directed CHS-1 to introduce CHS-2 to **JIMENEZ**.

4 CHS-2 began cooperating with the government in 2020 in hopes of receiving

5 consideration for pending state charges for narcotics possession and distribution. CHS-2

6 has a criminal history that includes convictions for Burglary, Theft, and Possession of

7 Controlled Substances. CHS-2 has previously cooperated with local law enforcement

8 resulting in the seizure of narcotics, firearms, the issuance of search warrants, the

9 application of tracking warrants, the application of electronic surveillance warrants, and

10 the arrests of individuals involved in criminal activity. On or about June 6, 2024, CHS-1

11 called **JIMENEZ** at telephone number 360-200-9308, to set up a meeting, for the

12 purpose of introducing a buyer to **JIMENEZ**. On June 6, 2024, agents met with CHS-1

13 and CHS-2 and searched their vehicles and persons. CHS-1 called JIMENEZ in the

14 presence of agents, and **JIMENEZ** gave the meeting location of 2101 NE Andresen Rd,

15 Vancouver, WA, the parking lot of WinCo Foods. Agents gave CHS-1 and CHS-2 video

16 and audio recording devices and followed CHS-1 and CHS-2 to the meeting location.

17        8.      At the meeting, CHS-1 introduced **JIMENEZ** to CHS-2 and **JIMENEZ**

18 provided samples of narcotics including heroin, cocaine, and fentanyl pills. A day later,

19 June 7, 2024, CHS-1 met with **JIMENEZ** again, and **JIMENEZ** provided CHS-1 with a

20 sample of methamphetamine. For that meeting, **JIMENEZ** instructed CHS-1 to meet him

21 at The Addison Apartments, located at 7531 NE 18th St, Vancouver, WA. During

22 surveillance of the meeting on June 7, 2024, an agent was able to observe **JIMENEZ**

23 entering apartment 3 of Building A after meeting with CHS-1. This meeting with CHS-1

24 was also video and audio recorded.

25 //

26 //

27 //

Complaint - 5
*United States v. Ricardo Jeovany Jimenez Vazquez*
USAO # 2024R00696

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**June 12, 2024, Controlled Purchase of Fentanyl from JIMENEZ**

9.      On June 12, 2024, at the direction of agents, CHS-2 coordinated a meeting with JIMENEZ at 360-200-9308, via calls and texts, for the purpose of purchasing 1,000 fentanyl pills.

10.     Agents met with CHS-2 at a predetermined staging location where CHS-2 was searched for contraband. CHS-2 was equipped with FBI recording devices and provided with $1,400 to purchase 1,000 fentanyl pills from JIMENEZ. Agents maintained surveillance on CHS-2 during the entirety of the operation.

11.     An agent observed **JIMENEZ** depart from Building A of the Addison Apartments and another agent observed him arrive, on foot, at the meeting location of 2101 NE Andresen Rd, Vancouver, WA, the parking lot of WinCo Foods. **JIMENEZ** entered CHS-2's vehicle and provided them with blue pills wrapped in plastic. **JIMENEZ** told CHS-2 that he gave them an extra 100 pills, totaling 1,100. After the meeting with CHS-2, an agent observed **JIMENEZ** return to Building A of the Addison Apartments, and recorded a video of **JIMENEZ**.

12.     CHS-2 departed the meeting location, while under surveillance by agents, and met with agents at a pre-determined debrief location. CHS-2 provided the approximately 1,100 suspected fentanyl pills to agents and was again searched for contraband. Agents transported the 1,100 suspected fentanyl pills to the FBI office in Vancouver, Washington where it was weighed, packaged, and entered into evidence storage.

13.     The drug evidence was analyzed at the DEA Western Laboratory and indicated the presence of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl) at a purity of 1.9% +/- 0.3%. The total net weight of the substance was 120.7 g +/- 0.2 g.

//

//

**June 27, 2024, Controlled Purchase of Methamphetamine from JIMENEZ**

14.     On June 27, 2024, at the direction of FBI agents, CHS-2 coordinated a meeting with **JIMENEZ** at 360-200-9308, via calls and texts, for the purpose of purchasing one pound of methamphetamine. **JIMENEZ** instructed CHS-2 to meet at the same location as the last meeting, the parking lot of the WinCo Foods.

15.     Later in the afternoon of June 27, 2024, agents met with CHS-2 at a predetermined staging location. CHS-2 was searched for contraband and provided FBI recording devices and $1,400 to purchase one pound of methamphetamine from **JIMENEZ**. FBI agents and TFOs maintained constant surveillance on CHS-2 during the entirety of the operation. After meeting with FBI at the predetermined staging location, CHS-2 drove to the WinCo Foods while being surveilled by agents.

16.     Shortly after CHS-2 arrived at the WinCo Foods, **JIMENEZ** called CHS-2 told them he would be arriving soon. Then, CHS-2 departed the parking lot of WinCo Foods, in tandem with a silver Toyota Matrix bearing Oregon license plate 698NVV. Both vehicles parked at the Walgreens located just down the street, at 2903 NE Andresen Rd, Vancouver, WA. **JIMENEZ** exited the Matrix and entered CHS-2's vehicle.

17.     After providing CHS-2 with 16 individually wrapped bundles of a crystalline substance, **JIMENEZ** re-entered the passenger side of the Matrix and he and the driver departed. After completing a series of surveillance detection maneuvers, which included indirect paths of travel down residential streets, the Matrix returned to the Addison Apartments and parked.

18.     When CHS-2 departed the Walgreens, they were surveilled by agents en route to the pre-determined de-brief location. Upon arriving at the pre-determined de-brief location, CHS-2 provided the bag containing the 16 individually wrapped bundles of suspected methamphetamine to agents and was searched for contraband. The suspected methamphetamine was transported to the FBI office in Vancouver, Washington by agents, where it was weighed, packaged, and entered into evidence storage.

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

19.    The drug evidence was analyzed at the DEA Western Laboratory and indicated the presence of methamphetamine at a purity of 97% +/- 6%. The total net weight of the substance was 447.5 grams +/- 0.3 g.

**July 11, 2024, Controlled Purchase of Methamphetamine from JIMENEZ**

20.    On July 11, 2024, CHS-2 contacted **JIMENEZ** at 360-200-9308 via calls and texts, to coordinate a purchase of another pound of methamphetamine.

21.    In the afternoon of July 11, 2024, FBI agents met with CHS-2 at a predetermined staging location where CHS-2 was searched for contraband. CHS-2 was provided with $1,200 to purchase one pound of methamphetamine from **JIMENEZ** and FBI recording devices. FBI agents and TFOs maintained surveillance on CHS-2 during the entirety of the operation.

22.    The meeting location was the same as the previous two controlled purchases, the parking lot of the WinCo Foods. **JIMENEZ** arrived in the same silver Toyota Matrix as the previous operation on June 27, 2024. CHS-2 departed the WinCo and followed the Matrix to the entrance of the Addison Apartments where **JIMENEZ** entered CHS-2's vehicle carrying a brown paper bag. After **JIMENEZ** provided CHS-2 with the suspected methamphetamine, CHS-2 drove **JIMENEZ** through the parking lot to Building A. The Toyota Matrix was waiting in front of Building A and **JIMENEZ** entered that vehicle.

23.    CHS-2 departed to the pre-determined de-brief location, and provided the suspected methamphetamine to FBI agents and was searched for contraband. The suspected methamphetamine was transported by agents to the FBI office in Vancouver, Washington where it was packaged and weighed, and entered into evidence storage.

24.    The drug evidence was analyzed at the DEA Western Laboratory and indicated the presence of methamphetamine at a purity of 98% +/- 7%. The total net weight of the substance was 447.7 g +/- 0.2 g.

//

Complaint - 8
*United States v. Ricardo Jeovany Jimenez Vazquez*
USAO # 2024R00696

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**September 4, 2024, Controlled Purchase of Methamphetamine from JIMENEZ**

25.     On September 4, 2024, CHS-2 contacted **JIMENEZ** on 971-837-5043 via calls and texts, to coordinate a purchase of another pound of methamphetamine. **JIMENEZ** had previously contacted CHS-2 on 971-837-5043 and told them it was his new number.

26.     In the afternoon of September 4, 2024, FBI agents met with CHS-2 at a predetermined staging location where CHS-2 was searched for contraband. CHS-2 was provided with $1,400 to purchase one pound of methamphetamine from **JIMENEZ** and FBI recording devices. FBI agents and TFOs maintained surveillance on CHS-2 during the entirety of the operation.

27.     The meeting location was different from the previous controlled purchases, the parking lot of Fred Meyer located at 6850 N Lombard St Portland, OR. **JIMENEZ** approached and entered CHS-2's vehicle carrying a brown paper bag. After **JIMENEZ** provided CHS-2 with the suspected methamphetamine, **JIMENEZ** exited the vehicle and entered the passenger side of a black Hyundai Elantra bearing Oregon license plate 059NFD.

28.     After departing the Fred Meyer parking lot, the Elantra made a large loop down residential streets in the vicinity, and eventually pulled down the driveway behind a blue house located at 7575 N Heppner Ave, Portland, OR 97203.

29.     CHS-2 departed to the pre-determined de-brief location, and provided the suspected methamphetamine to FBI agents and was searched for contraband. The suspected methamphetamine was transported by agents to the FBI office in Vancouver, Washington where it was packaged and weighed, and entered into evidence storage.

30.     The drug evidence was analyzed at the DEA Western Laboratory and indicated the presence of methamphetamine at a purity of 98% +/- 7%. The total net weight of the substance was 447.0 g +/- 0.2 g.

//

Complaint - 9
*United States v. Ricardo Jeovany Jimenez Vazquez*
USAO # 2024R00696

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**November 14, 2024, Controlled Purchase of Methamphetamine from JIMENEZ**

31.    On November 14, 2024, CHS-2 contacted **JIMENEZ** on 971-430-1004 via calls and texts, to coordinate a purchase of another pound of methamphetamine. This telephone number was previously given to CHS-2 by **JIMENEZ**. **JIMENEZ** contacted CHS-2 to inform them he had changed his number again.

32.    In the afternoon of November 14, 2024, FBI agents met with CHS-2 at a predetermined staging location where CHS-2 was searched for contraband. CHS-2 was provided with $1,400 to purchase one pound of methamphetamine from **JIMENEZ** and FBI recording devices. FBI agents and TFOs maintained surveillance on CHS-2 during the entirety of the operation.

33.    The meeting location given by **JIMENEZ** was El Jefe Birria food truck, 2711 NE Andresen Rd, Vancouver, WA 98661. **JIMENEZ** approached and entered CHS-2's vehicle carrying a reusable shopping bag. After **JIMENEZ** provided CHS-2 with the suspected methamphetamine, **JIMENEZ** exited the vehicle and sat down at a table in front of the food truck with two other Hispanic males.

34.    **JIMENEZ** and the other two Hispanic males stood up from the table and walked to two cars parked nearby: a silver Honda Accord bearing Oregon license plate 239NVL and a silver Kia Sorrento bearing a paper plate with the dealer name "Price." **JIMENEZ** gave some cash to one of the Hispanic males, who got into the silver Accord. **JIMENEZ** and the other Hispanic male entered the Kia Sorrento, **JIMENEZ** in the passenger side, and departed the food truck. They drove to the Cecilia Place Apartments, located at 6263 N Cecelia St, Portland, OR, parked, and walked towards the buildings in the southwestern part of the complex.

35.    CHS-2 departed to the pre-determined de-brief location, and provided the suspected methamphetamine to FBI agents and was searched for contraband. The suspected methamphetamine was transported by agents to the FBI office in Vancouver, Washington where it was packaged and weighed, and entered into evidence storage. It

Complaint - 10
*United States v. Ricardo Jeovany Jimenez Vazquez*
USAO # 2024R00696

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  presumptively tested positive for the presence of methamphetamine, and the total weight,

2  with packaging, was approximately 506.6 grams.

3  **CONCLUSION**

4      36.    Based on the above facts, I believe probable cause exists that Ricardo

5  Jeovany JIMENEZ Vazquez did knowingly conspire to distribute, and possess with intent

6  to distribute, fentanyl and methamphetamine, controlled substances under Schedule 1,

7  Title 21, United States Code, Section 812, in violation of Title 21, United States Code,

8  Sections 846 and 841(a)(1).

9

10  CATHERINE ALLAWAY  Digitally signed by CATHERINE ALLAWAY
    Date: 2024.12.09 15:07:08 -08'00'
    _____

11  CATHERINE ALLAWAY,
    Complainant

12  Special Agent, Federal Bureau of
    Investigation

13

14      Based on the Complaint and Affidavit sworn to me via telephone, the Court

15  hereby finds that there is probable cause to believe the defendants committed the offense

16  set forth in the Complaint.

17      Dated this 10th day of December, 2024.

18

19  _____
    GRADY J. LEUPOLD

20  United States Magistrate Judge

21

22

23

24

25

26

27

Complaint - 11
*United States v. Ricardo Jeovany Jimenez Vazquez*
USAO # 2024R00696

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800